Knute ROCKNEY, Appellant,

v.

BOSLOUGH CONSTRUCTION CO., Alaska National Insurance Co., and the Alaska Workers' Compensation Board, Appellees.

No. S–11444.

Supreme Court of Alaska.

May 27, 2005.

Rehearing Denied Aug. 5, 2005.

William J. Soule, Law Office of William J. Soule, Anchorage, for Appellant.

Theresa Hennemann, Jeffrey D. Holloway, Holmes Weddle & Barcott, PC, Anchorage, for Appellees Boslough Construction Company and Alaska National Insurance Company.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

### OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

This appeal arises from the Alaska Workers' Compensation Board's approval of a vocational reemployment plan for Knute Rockney, who suffered a back injury while working for Boslough Construction. Rockney challenges the plan that would retrain him as drafter through the Architectural Engineering Technology program at the University of Alaska Anchorage. Because we agree that substantial evidence does not support that the plan meets Rockney's remunerative wage and the statutory time limitation, we reverse and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Rockney began to experience back pain from his job as a laborer for Boslough Construction on December 26, 2000. He applied for and was paid a variety of workers' compensation benefits through Boslough's insurer, Alaska National Insurance Company. Rockney also was deemed eligible for reemployment benefits under AS 23.30.041 because he could no longer work in construction and asbestos removal since these classifications were too demanding for his back.

Rockney's first reemployment plan (Plan I) was abandoned after being submitted for approval to the reemployment benefits administrator (RBA). The second plan (Plan II) aimed to retrain Rockney as a drafter through the Architectural Engineering Technology program at the University of Alaska Anchorage. Among other findings, Rehabilitation Specialist Marjorie Linder adopted Plan I's remunerative wage of $21.58 per hour and determined that Plan II would meet Rockney's remunerative wage of $21.58 per hour, that the labor market for drafters is "very ample," and that Rockney had the skills and aptitude to complete Plan II. Plan II also provided that Alaska National would pay for a computer for Rockney, although the insurer imposed certain conditions.

RBA Douglas Saltzman approved Plan II on March 4, 2003. Rockney appealed and began attending classes at UAA under the plan while his appeal was pending. At his professors' suggestions, Rockney dropped his summer math course and switched writing classes so that he could take slower-paced classes. These changes meant Rockney was three credits behind in completing the plan by the end of the summer of 2003.

Both the Workers' Compensation Board and the superior court rejected Rockney's challenges. He now appeals to us, contending that the plan fails to meet his remunerative wage, that the labor market is inadequate, that he cannot complete the plan within the statutory time frame, and that he should not have to buy his own computer. Additionally, he argues that the presumption of compensability applies to evaluating whether the plan meets the statutory requirements.

## III. STANDARD OF REVIEW

 When the superior court acts as an intermediate court of appeal, we give inde-

pendent consideration to the agency decision.[1] We independently review whether substantial evidence supports the board's factual findings.[2] Substantial evidence is "in light of the record as a whole, ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Under this standard, we will "not reweigh the evidence or draw [our] own inferences from the evidence."[4]

■ Determining the applicability of the statutory presumption of compensability is a question of law that we review de novo.[5]

## IV. DISCUSSION

### A. Substantial Evidence Does Not Support the Board's Findings that the Plan Meets Rockney's Remunerative Wage of $21.58 at the Entry Level.

■ The goal of reemployment plans is to "ensure[ ] remunerative employability in the shortest possible time."[6] Rockney argues that the plan does not meet this requirement because no evidence supports a finding that after completing the plan he could obtain an entry-level drafting job at his remunerative wage rate of $21.58 per hour. Boslough[7] conceded at oral argument that the plan needed to provide Rockney with opportuni-

ties to receive the remunerative wage at the entry level, but argues that substantial evidence supports that the plan does so.[8]

The board concluded that Rockney's plan met his remunerative wage because the mean hourly wage for *experienced* drafters was between $21.61 and $26.45 per hour. However, substantial evidence does not support the conclusion that Rockney could command such wages after completing the plan. The mean *entry-level* wage for drafters was between $14.35 to $17.13 per hour, well below an hourly wage rate of $21.58. Moreover, starting salaries for drafters based on employer surveys seem to vary from $8 to $16 per hour, with many entry-level jobs at the lower end of that range.

Boslough argues that Rockney's construction background and the plan's provision of fourteen hours of drafting courses above the certification requirements would move Rockney out of the entry-level salary ranges. However, Boslough does not point to substantial evidence supporting this contention. The additional classes apparently would not provide Rockney with on-the-job drafting experience. Although the plan notes his "construction experience will provide a practical orientation to his work," and a few of the surveyed employers said "construction experience" would be a "plus," none of the sur-

1. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

2. *See* AS 23.30.041(j) (requiring the board to review the RBA's approval of a vocational reemployment plan for an abuse of discretion); AS 44.62.570(b) & (c) (noting an agency abuses its discretion when it lacks substantial evidence to support its findings); *Morgan v. Lucky Strike Bingo*, 938 P.2d 1050, 1055 (Alaska 1997) (same).

3. *Cheeks v. Wismer & Becker*, 742 P.2d 239, 244 n. 6 (Alaska 1987).

4. *Id.*

5. *E.g., Kirby v. Alaska Treatment Ctr.*, 821 P.2d 127, 129 n. 5 (Alaska 1991).

6. AS 23.30.041(i). AS 23.30.041(r)(7) defines "remunerative employability" as "having the skills that allow a worker to be compensated with wages or other earnings equivalent to at least 60 percent of the worker's gross hourly wages at the time of injury."

7. Throughout this opinion, we use Boslough to refer to the positions of both Boslough and Alaska National.

8. Boslough also argues Rockney's remunerative wage should be $8.40 per hour, or 60 percent of his hourly wages at Boslough under AS 23.30.041(r)(7), and that substantial evidence supports that the plan would satisfy this rate. However, the rehabilitation specialist classified a $40 Christmas gift certificate as a "bonus" under 8 Alaska Administrative Code (AAC) 45.490, which led to a calculation based on Rockney's higher union wages in prior jobs, rather than merely on his non-union Boslough wages. The board indicated it would conclude that Rockney's appropriate remunerative wage was $21.58 per hour. Given the possibility of an equally high remunerative wage even if we reject that the gift certificate was a bonus under 8 AAC 45.490, we assume $21.58 is the appropriate remunerative wage.

veyed employers indicated that they would consider Rockney an experienced drafter based on his work history.

Therefore, we conclude substantial evidence does not support a finding that the plan would meet Rockney's remunerative wage of $21.58 per hour at the entry level.

### B. Substantial Evidence Does Not Support the Board's Finding that the Plan Could Be Completed Within the Statutory Time Frame of Two Years.

■ Alaska Statute 23.30.041(k) limits the plan time to two years.[9] Rockney argues that because of necessary changes to his course work, substantial evidence does not support that he could complete his plan within this time frame.

Boslough asserts that Rockney presented "only conjecture" that the plan would exceed the statutory time frame. We disagree. At the time the board approved Rockney's plan, he had dropped his summer math course and switched writing classes at his professors' suggestion because he needed slower-paced classes.[10] The board acknowledged his plan needed to be modified, but nevertheless concluded that it remained viable. However, there is not substantial evidence in the record showing that Rockney could rearrange his schedule to accommodate the slower-paced classes without exceeding two years.[11]

The plan already included six semesters of courses over a full two years. Dropping the course put Rockney three credits behind, which he believed would likely take a seventh semester to complete.[12]

### C. The Presumption of Compensability under AS 23.30.120 Does Not Apply in Rockney's Case.

■ Lastly, Rockney argues that the board should have applied the presumption of compensability to determine the "true facts" underlying each of his challenges to the reemployment plan and then should have considered whether the RBA abused his discretion.

Alaska Statute 23.30.120 establishes a presumption that an employee's claim for injury comes within the scope of the Alaska Workers' Compensation Act in the absence of substantial evidence to the contrary. "In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that (1) the claim comes within the provisions of this chapter[.]"[13]

■ We have broadly interpreted the presumption to apply to "any claim for compensation under the workers' compensation statute."[14] Consequently, we have applied the presumption to any disputes over the employee's eligibility for benefits,[15] including eli-

9. AS 23.30.041(k) provides that "[b]enefits related to the reemployment plan may not extend past two years from the date of plan approval or acceptance, whichever date occurs first, at which time the benefits expire."

10. Boslough did not argue, until its petition for rehearing, that these events, which occurred after RBA approval of the plan, should not be considered on the question of whether substantial evidence supports the board's decision to uphold the RBA's approval of the plan. Accordingly we consider the point waived. *State v. Beard*, 960 P.2d 1, 9 (Alaska 1998) (arguments raised for the first time in a petition for rehearing are considered waived).

11. Boslough cites some testimony by Rockney suggesting that his rehabilitation specialist was "working" with school counselors to try to cram the math class into one of the six semesters covered by the plan. But we think that Rockney's testimony as a whole does not constitute substantial evidence that Rockney would have

succeeded in completing the course work over six semesters.

12. Because we reverse the approval of the plan on the grounds that substantial evidence is lacking to support that the plan meets the remunerative employability requirement and time limitations, we do not consider Rockney's arguments that the labor market is inadequate and that Alaska National impermissibly imposed conditions on paying for his computer.

13. AS 23.30.120(a).

14. *Municipality of Anchorage v. Carter*, 818 P.2d 661, 665 (Alaska 1991) (applying presumption to claim for continuing medical care).

15. *Meek v. Unocal Corp.*, 914 P.2d 1276, 1279–80 (Alaska 1996) (applying presumption to claim for permanent total disability); *Wien Air Alaska v. Kramer*, 807 P.2d 471 (Alaska 1991) (applying presumption to claim for continuing temporary

gibility for reemployment benefits.[16] Additionally, the presumption applies when an employer or insurer disputes who must pay for the benefits.[17] Using the presumption in these cases "simplif[ies] proceedings before the Board and thus reduce[s] the hazards interinsurer disputes pose for the injured worker." [18]

However, the presumption of compensability does not apply to Rockney's case because Alaska National and Boslough do not dispute Rockney's entitlement to reemployment benefits or their liability for those benefits. In effect, all the parties agree that Rockney's "claim comes within the provisions of this chapter." [19] Rockney is not seeking coverage; instead, he disputes the plan under which his benefits will be provided. Moreover, applying the presumption to evaluating reemployment plans does not promote the goals of encouraging coverage and prompt benefit payments.

Therefore, we conclude that the board should not apply the presumption of compensability in evaluating a reemployment plan.

## V. CONCLUSION

We REVERSE the superior court decision concluding the reemployment benefits administrator and the board did not abuse their discretion in approving Rockney's reemployment plan. We REMAND for further proceedings consistent with this opinion.[20]

---

total disability); *Sokolowski v. Best W. Golden Lion Hotel*, 813 P.2d 286, 292 (Alaska 1991) (holding presumption applies to analyzing whether injury suffered going to work was compensable because route constituted "special hazard"); *Anchorage Roofing Co. v. Gonzales*, 507 P.2d 501, 504–05 (Alaska 1973) (holding injuries suffered on trip for business and pleasure were compensable); *Thornton v. Alaska Workmen's Comp. Bd.*, 411 P.2d 209, 211 (Alaska 1966) (applying presumption to question of whether work contributed to employee's heart attack).

16. *Kirby*, 821 P.2d at 129.

17. *Veco, Inc. v. Wolfer*, 693 P.2d 865, 868 (Alaska 1985) (applying presumption to dispute between insurer and self-insured employer over who pays worker's benefits); *Providence Wash. Ins. Co. v.* *Bonner*, 680 P.2d 96 (Alaska 1984) (applying presumption to dispute between successive insurance companies over who pays for worker's benefits).

18. *Bonner*, 680 P.2d at 100 (Rabinowitz, J., concurring).

19. AS 23.30.120(a).

20. The statutory time and cost limitations in AS 23.30.041(k) and (*l*) will restart for any new plan. Although *Binder v. Fairbanks Historical Pres. Found.* held that the caps do not start over for a second plan when the first plan is unsuccessful, that case is not on point because Rockney never approved of his plan and challenged it as invalid at its inception. *See* 880 P.2d 117, 120–23 (Alaska 1994).