HARNISH GROUP, INC., d/b/a NC Machinery Company; and Alaska National Insurance Company, Appellants,

v.

Jerry D. MOORE, Appellee.

No. S–12238.

Supreme Court of Alaska.

June 15, 2007.

Richard L. Wagg, Russell, Tesche, Wagg, Cooper & Gabbert, Anchorage, for Appellants.

No appearance by Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

After injuring his back at work, Jerry Moore received workers' compensation benefits and participated in a reemployment plan. When that plan did not work out, another was developed. His employer, NC Machinery Company, changed his benefits to permanent total disability benefits on January 23, 2004 but five days later signed the second reemployment plan. On January 27, 2004, an attorney entered an appearance for Moore; a short while later, the attorney filed a workers' compensation claim on Moore's behalf. In response to this claim, NC Machinery admitted that it was liable for permanent total disability benefits but denied that it should have to pay attorney's fees, asserting that it had not controverted the claim. The Alaska Workers' Compensation Board awarded statutory minimum attorney's fees under AS 23.30.145(a) after finding that NC Machinery had controverted in fact Moore's claim. NC Machinery appealed to the superior court, which affirmed the Board's ruling. NC Machinery appeals the Board's determination that it controverted Moore's claim. Because NC Machinery did not controvert Moore's claim, we reverse the award of statutory minimum attorney's fees under AS 23.30.145(a). But we remand for an award of reasonable attorney's fees under AS 23.30.145(b) because the Board's findings that NC Machinery resisted payment of benefits and that Moore's attorney played a significant role in his receipt of benefits are supported by substantial evidence.

## II. FACTS AND PROCEEDINGS

Jerry Moore hurt his back moving a sixty-pound battery while working for NC Machinery Company in Fairbanks. NC Machinery promptly began to pay temporary total disability (TTD) benefits to Moore. Almost a year after the injury, Moore's treating physician, Dr. George Vrablik, notified NC Machinery that Moore would be unable to return to his usual work. Shortly thereafter, both Moore and Alaska National Insurance Company, NC Machinery's workers' compensation insurer, asked that Moore be evaluated for reemployment benefits.[1] On September 16, 2002, the Reemployment Benefits Administrator (RBA) found Moore eligible for reemployment benefits. After an evaluation by his chosen rehabilitation specialist, Moore selected the vocational goal of parts salesperson. On December 23, 2002, Moore was involved in a car accident that reinjured his back and left him medically unstable. Because of the car accident, Moore's reemployment plan was suspended to give him time to recover from his new injuries.

On February 13, 2003, Moore signed a fee agreement with Robert Beconovich to represent him in his workers' compensation case. Moore and his wife decided to retain counsel in the workers' compensation case because they were concerned after the motor vehicle accident that "things were going to be getting real complicated and that we needed representation." On February 14, 2003, the Moores sent a letter to NC Machinery, telling it that Beconovich was now handling the workers' compensation case. The Moores continued to have direct contact with NC Machinery and the rehabilitation specialists.

On April 9, 2003, Moore was involved in a second car accident, which he said caused further exacerbation of his back injuries. Dr. Vrablik did not think that Moore had suffered any permanent injury from the April 9 motor vehicle accident. On May 9, 2003, Dr. Vrablik reviewed and approved a job analysis, releasing Moore to work three hours a day, five days a week; the job was a trial work placement in hardware or sporting goods sales. Moore began his trial work as a salesperson in sporting goods on May 19,

---

**1.** In this opinion, we refer to both NC Machinery and Alaska National as "NC Machinery."

2003; his new employer provided him with a padded stool to use when he needed to get off his feet. After three days at the trial work placement, Moore indicated that he was in too much pain to continue.

In the meantime, NC Machinery arranged for an employer's independent medical examination (IME) of Moore. On May 14, 2003, Dr. Shawn Hadley, a specialist in physical medicine and rehabilitation, examined Moore and reviewed his medical records and reports. Dr. Hadley expressed the opinion that Moore's employment with NC Machinery was a substantial factor in Moore's back-related complaints and chronic pain problems, and she recommended that Dr. Paul Craig, a neuropsychologist, evaluate Moore as part of the IME. Dr. Craig evaluated Moore on September 3, 2003. His testing showed that Moore had borderline intellectual functioning and a learning disorder. Dr. Craig recommended that any training for Moore be "by seeing and doing" and stated that "[o]n-the-job training would be critical for his success."

On July 22, 2003, Dr. Vrablik determined that Moore was medically stable as of June 24, 2003, and rated him as having a thirteen percent whole person impairment. NC Machinery changed Moore's TTD benefits to permanent partial impairment (PPI) benefits effective June 25, 2003. Moore continued to work with his rehabilitation counselors; they wrote to the RBA in August 2003, informing him that they needed an assessment of Moore's functional capacities before they could develop a new reemployment plan. NC Machinery reclassified Moore's PPI benefits as "41K" benefits after Moore had used up his PPI benefits.[2]

Dr. Vrablik arranged for Moore to have a physical capacities evaluation on October 8–9, 2003 in Fairbanks as part of the vocational rehabilitation efforts. The physical capacities evaluation showed limitations in all areas, and the evaluator concluded that Moore was not able to work full time or at a sedentary job.

After Moore was found eligible for Social Security disability benefits, he told the rehabilitation specialists that he felt unable to continue in reemployment efforts because he did not believe that he could be retrained or employed. At some point, however, the reemployment process began again, with Moore's participation. Moore was tested at Sylvan Learning Center in December 2003 to assess his educational level. Moore's vocational counselors developed a reemployment plan to train Moore as a check cashier, which was a more sedentary job than the sales job he had previously attempted. To prepare him for this work, Moore first needed to attend six months of basic adult education classes. On January 15, 2004, Dr. Vrablik approved Moore's participation in the classes. The rehabilitation specialists sent the reemployment plan to Moore and NC Machinery for signature. On January 27 Moore told the rehabilitation specialists that he wanted to review the plan with his attorney before he signed it. The next day, NC Machinery signed the reemployment plan.

On January 27, 2004, Beconovich filed his entry of appearance with the Board. On January 30, 2004, NC Machinery filed a compensation report showing that it had reclassified the reemployment (41K) benefits as permanent total disability (PTD) benefits. It sent Moore his first PTD check on January 23, 2004. Moore received this check, labeled "PTD," for an increased amount of money on January 27, 2004.

Beconovich later filed a workers' compensation claim on Moore's behalf. NC Machinery received the claim on February 4; it was filed with the Board on February 10, 2004. The claim sought PTD benefits from July 2, 2001 (the date of injury), as well as interest, attorney's fees, and costs. In its answer to the claim, NC Machinery admitted liability for PTD benefits from June 25, 2003 (the date of medical stability) "through continuing" but denied the claims for attorney's fees and interest. As an affirmative defense, NC Machinery alleged that Moore's disability benefits "were converted to permanent total

---

**2.** Under AS 23.30.041(k), employers are required to provide additional compensation to workers participating in the reemployment process if PPI benefits are exhausted before the completion of the reemployment plan.

disability benefits prior to an attorney entering an appearance and prior to any claim being made. Therefore, no attorney['s] fees are due." NC Machinery served its answer on Moore on February 10 and filed the answer with the Board on February 17.

On February 4, 2004, Dr. Hadley again examined Moore to complete her IME. She offered the opinion that Moore's PPI rating should be only five percent of the whole person, noted "validity issues" with the physical capacities evaluation done in October 2003, and recommended that another one be performed in Anchorage if reemployment options remained an issue. She saw no reason that Moore could not be employed full time.

On February 12, after receiving NC Machinery's answer admitting liability for PTD benefits, Beconovich wrote to the rehabilitation specialists who worked with Moore, asking them to close Moore's reemployment case. They promptly wrote the RBA, telling him that they were ending their work on Moore's reemployment benefits.

The Board held a hearing solely on the issue of attorney's fees on August 26, 2004.[3] The only two witness were Ryan LeVeque, the claims adjuster for Alaska National, and Lorrie Moore, Moore's wife. The focus of Moore's request for fees was that the second reemployment plan was unreasonable and the employer's pursuit of it demonstrated its resistance to paying PTD benefits. LeVeque testified that he had told Moore's vocational rehabilitation counselors on January 21, 2004 that he would be reclassifying Moore's benefits as PTD. He stated that he had given notice to the Moores of the conversion to PTD benefits by means of the January 30 compensation report. He testified that he did not recognize the Moores' letter informing him of Beconovich's representation as adequate to establish that Beconovich was in fact their attorney. He also indicated that before receiving the workers' compensation claim on February 4, 2004, no one had asked telephonically or in writing that Moore's benefits be changed to PTD benefits. He stated that nothing that Beconovich had done had

caused him to change the benefits from 41K benefits to PTD benefits.

Mrs. Moore testified that she was the family record keeper and told the Board when and why Moore retained Beconovich. She also indicated that the Moores disagreed with the second reemployment plan and had explained their concerns to the rehabilitation specialists. She said that she had faxed many documents to Beconovich over the course of the year to keep him apprised of what was going on in the case.

In its August 27, 2004 decision, the Board found that reemployment benefits were not terminated until February 12, 2004 and were terminated only at the employee's request. It found that it was "very predictable" that Moore would file for PTD benefits and that Beconovich filed an entry of appearance and claim before Moore had notice of NC Machinery's reclassification of benefits. It further found that NC Machinery attempted to further the reemployment plan after it began to pay PTD benefits and that the employer "attempted to resist the payment of PTD benefits." It found that "the employee's attorney was instrumental in securing and preserving" the PTD benefits, that the PTD benefits were of greater value than the reemployment benefits, and that Beconovich "provided valuable services in the securing of the PTD benefits." It then awarded statutory minimum attorney's fees under AS 23.30.145(a), stating that they were reasonable given the successful prosecution of the claim. It awarded statutory minimum attorney's fees on "all additional benefits paid to the employee retroactive as PTD benefits on or about January 23, 2004, and on all PTD benefits paid to the employee thereafter, and continuing." Its order directed NC Machinery to pay the attorney's fees.

NC Machinery petitioned for reconsideration of the Board's award of attorney's fees. It contended that the Board had incorrectly awarded fees under AS 23.30.145(a) because AS 23.30.145(a) requires that a claim be controverted and the decision did not identify the manner in which the claim was controverted. NC Machinery also pointed out that

---

**3.** Moore did not ask that the hearing include a determination that benefits from the date of inju-

ry to the date of medical stability be characterized as PTD benefits rather than TTD benefits.

the issue identified at the beginning of the decision was whether to award fees under AS 23.30.145(b) and that the decision used the language of subsection .145(b), even though Moore had asked for fees under subsection .145(a).

On September 24, 2004, the Board entered its decision and order on reconsideration. The reconsideration decision modified its initial decision in response to the petition in two minor respects and affirmed all other aspects of the decision. The Board changed its August decision so that the issue identified was whether Moore was entitled to attorney's fees under AS 23.30.145, rather than subsection .145(b). The Board also clarified that NC Machinery's "resistance" to payment, mentioned in its first decision, was actually a "controversion in fact." The Board also found that the letter from the Moores to NC Machinery was adequate notice that Beconovich was representing Moore. It found that the adjuster was not credible because his testimony that he terminated reemployment efforts when he began PTD benefits was inconsistent with the reports from the rehabilitation specialists and his signing the reemployment plan on January 28, 2004. The Board reconfirmed its finding that it was predictable that Moore would file for PTD benefits.

The Board also found that NC Machinery resisted payment of PTD benefits until it filed its answer, so that the workers' compensation claim was filed while NC Machinery was still trying to undermine Moore's "continuing entitlement to PTD benefits." The Board noted that even though the adjuster had reclassified the benefits as PTD benefits, he just as easily could have reclassified them again at some later date if NC Machinery was successful "in its pursuit of a reemployment plan." The Board concluded that it "[could not] find the employer would have

provided PTD benefits to the employee at the time it did, but for the representation of the employee by Mr. Beconovich," and found that Beconovich "played a significant, if not decisive, role" in securing Moore's PTD benefits. It thus confirmed its award of attorney's fees under AS 23.30.145(a).

NC Machinery appealed to the superior court; the superior court affirmed the Board's ruling based on substantial evidence and reasonableness. NC Machinery appeals.

## III. DISCUSSION

### A. Standard of Review

In a workers' compensation appeal, we directly review the Board's findings and decision.[4] Whether the Board had the authority to award attorney's fees under AS 23.30.145(a) is a question of statutory interpretation involving no administrative expertise; therefore, the substitution-of-judgment standard is the appropriate standard of review.[5] We review the Board's factual findings to see if they are supported by substantial evidence.[6] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [7]

### B. The Board Erred in Awarding Statutory Minimum Fees Rather than Reasonable Fees.

#### 1. Statutory provisions

At issue in this case is the award of statutory minimum attorney's fees under the Alaska Workers' Compensation Act.[8] Alaska Statute 23.30.145 provides for the award of attorney's fees in workers' compensation cases. Subsection (a) authorizes the Board to award attorney's fees as a percentage of the amount of benefits awarded to an employee when an employer controverts a claim.[9] An award under subsection .145(a)

---

4. *Rockney v. Boslough Constr. Co.*, 115 P.3d 1240, 1242 (Alaska 2005) (citing *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992)).

5. *Underwater Constr., Inc. v. Shirley*, 884 P.2d 156, 158 (Alaska 1994).

6. *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000).

7. *Id.* (quoting *Grove v. Alaska Constr. & Erectors*, 948 P.2d 454, 456 (Alaska 1997)).

8. AS 23.30.001–.400.

9. AS 23.30.145(a) provides, in part:

   Fees for legal services rendered in respect to a claim are not valid unless approved by the board, and the fees may not be less than 25

may include continuing fees on future bene-fits.[10] In contrast, subsection (b) requires an employer to pay reasonable attorney's fees when the employer delays or "otherwise re-sists" payment of compensation and the em-ployee's attorney successfully prosecutes his claim.[11]

■ In a workers' compensation case an employer can contest a claimant's entitle-ment to benefits in two ways. After a report of injury is filed, if an employer disputes its liability and refuses to pay benefits, it must file a notice of controversion.[12] Whether or not it has filed a notice of controversion, an employer may also deny liability for benefits in its answer to a workers' compensation claim.[13]

We have previously held that a formal notice of controversion is not necessary for an award of attorney's fees under AS 23.30.145(a).[14] A controversion in fact is ade-quate to require payment of statutory mini-mum fees.[15] In this case NC Machinery never filed a notice of controversion. It filed an answer to Moore's workers' compensation claim in which it admitted that he was eligi-ble for PTD benefits as of the date of medical stability but denied that it should pay attor-ney's fees. The Board awarded attorney's fees to Moore pursuant to AS 23.30.145(a) after the Board found, in its decision on

reconsideration, that NC Machinery had con-troverted in fact Moore's claim.

## 2. The Board erred in awarding fees under subsection .145(a).

■ NC Machinery contends that the Board erred in awarding fees under subsec-tion .145(a). It argues that the Board's anal-ysis in evaluating Moore's request for attor-ney's fees actually relied on the language and standards of AS 23.30.145(b) rather than sub-section .145(a), which requires a controver-sion in fact. NC Machinery maintains that its actions on Moore's claim do not meet the standard for a controversion in fact; it alleg-es that "a controversion-in-fact occurs where the employer explicitly *denies* the claimed benefits, and continues to do so throughout the course of litigation in which the claimant ultimately prevails and is awarded the dis-puted benefits."

We have never delineated the exact actions an employer must take to oppose a claim in order for there to be a controversion in fact. But we previously upheld the imposition of subsection .145(a) fees when an employer did not "unqualifiedly accept" the employee's claim for PTD compensation.[16] Here, NC Machinery unqualifiedly accepted Moore's claim for PTD benefits in its answer to the

---

percent on the first $1,000 of compensa-tion.... When the board advises that a claim has been controverted, in whole or in part, the board may direct that the fees for legal services be paid by the employer or carrier in addition to compensation awarded; the fees may be allowed only on the amount of compensation controverted and awarded. When the board advises that a claim has not been controverted, but further advises that bona fide legal services have been rendered in respect to the claim, then the board shall direct the payment of the fees out of the compensation awarded.

10. *Gibeau v. Kollsman Instrument Co.*, 896 P.2d 822, 822–23 (Alaska 1995) (refusing to award subsection .145(a) attorney's fees on a PTD award as a lump sum).

11. AS 23.30.145(b) provides:
If an employer fails to file timely notice of controversy or fails to pay compensation or medical and related benefits within 15 days after it becomes due or otherwise resists the payment of compensation or medical and re-lated benefits and if the claimant has employed

an attorney in the successful prosecution of the claim, the board shall make an award to reim-burse the claimant for the costs of the proceed-ings, including reasonable attorney['s] fees. The award is in addition to the compensation or medical and related benefits ordered.

12. AS 23.30.155(a). An employer who disputes liability solely because another employer may be responsible for some or all of the claim may still be required to pay benefits while the dispute is pending. AS 23.30.155(d).

13. AS 23.30.110; 8 Alaska Administrative Code (AAC) 45.050 (2004).

14. *Wien Air Alaska v. Arant*, 592 P.2d 352, 365 (Alaska 1979), *overruled on other grounds by Fair-banks N. Star Borough Sch. Dist. v. Crider*, 736 P.2d 770 (Alaska 1987); *Alaska Interstate v. Houston*, 586 P.2d 618, 620 (Alaska 1978).

15. *Houston*, 586 P.2d at 620.

16. *Shirley*, 884 P.2d at 159.

claim, so it cannot have controverted in fact Moore's claim.

We therefore conclude that the Board erred in applying AS 23.30.145(a) in Moore's case. NC Machinery never controverted in fact Moore's claim for benefits because NC Machinery's answer to Moore's workers' compensation claim admitted liability for PTD benefits. All of the actions that the Board identified as showing NC Machinery's resistance to paying Moore PTD benefits occurred before Moore filed a workers' compensation claim.

Moreover, AS 23.30.145(a) provides, in part, "[w]hen the board advises that a *claim* has been controverted, in whole or in part, the board may direct that the fees for legal services be paid by the employer or carrier in addition to compensation awarded...." (Emphasis added.) The Alaska Workers' Compensation Act does not define the term "claim."[17] However, we have previously construed the term "claim" to mean the written application for benefits that is filed with the Alaska Workers' Compensation Board, not the initial report of injury.[18] To determine whether there has been a controversion in fact in cases where an employer does not file a notice of controversion, the Board needs to look at the employer's answer to a claim for benefits and its actions after the claim is filed to determine whether the employer has controverted in fact the employee's claim for benefits.

In Moore's case, the Board, on reconsideration, decided that NC Machinery's resistance to paying PTD benefits was a controversion in fact. The Board found in this case that NC Machinery resisted paying Moore's PTD benefits by continuing the reemployment process after it had reclassified the benefits. Specifically, the adjuster for NC Machinery signed the reemployment plan after he had converted Moore's benefits to PTD. Based on the actions of the rehabilitation specialists working with Moore, the Board did not believe that the adjuster informed the specialists that NC Machinery considered Moore to be permanently totally disabled and therefore not in need of continuing reemployment benefits.[19] Although substantial evidence in the record supports the Board's conclusion that NC Machinery resisted paying Moore PTD benefits, the actions that the Board identified as resistance cannot serve as the basis for a controversion in fact of Moore's claim because Moore's claim had not been filed when the actions occurred.[20] In order for an employer to be liable for attorney's fees under AS 23.30.145(a), it must take some action in opposition to the employee's claim after the claim is filed.

NC Machinery admitted liability for PTD benefits in its answer to Moore's claim. Because NC Machinery never actively opposed Moore's workers' compensation claim after he filed it, the Board erred in holding that NC Machinery controverted in fact Moore's claim.

### 3. Moore is entitled to reasonable fees under AS 23.30.145(b).

■ Although NC Machinery did not controvert in fact Moore's claim for PTD benefits, we also conclude that there is substantial evidence in the record to support an award of reasonable fees under AS 23.30.145(b). Fees may be awarded under subsection .145(b) when an employer delays payment or "otherwise resists the payment of compensation" and an employee retains an attorney in the

---

**17.** AS 23.30.395; *Jonathan v. Doyon Drilling, Inc.*, 890 P.2d 1121, 1123 (Alaska 1995).

**18.** *Jonathan*, 890 P.2d at 1124. In *Jonathan*, we noted that "[t]here is a presumption that the same words used twice in the same act have the same meaning" when we concluded that the term "claim" referred to the written application for benefits. *Id.* at 1123 (quoting *Kulawik v. ERA Jet Alaska*, 820 P.2d 627, 634 (Alaska 1991)).

**19.** AS 23.30.041(k) provides, in part, that "an employee may not be considered permanently totally disabled so long as the employee is involved in the rehabilitation process...."

**20.** NC Machinery argues that its efforts to "offer [Moore] the opportunity to re-enter the work force" should not serve as the basis for a finding of a controversion in fact. Because we conclude that NC Machinery did not controvert in fact Moore's claim, we do not need to address this question.

successful prosecution of the claim.[21] We recognize that the Board did not award attorney's fees pursuant to subsection .145(b), even though it relied on Board precedent construing subsection .145(b) in its initial decision.[22] But we can affirm the Board's decision to award fees on an alternative ground[23] and here the Board made adequate factual findings to support the imposition of reasonable attorney's fees against NC Machinery.

The first element for an award of fees under subsection .145(b) is that the employer "otherwise resisted" payment of benefits. The Board's finding that NC Machinery resisted payment of the PTD benefits is supported by substantial evidence. The Board found that NC Machinery was still engaged in the reemployment process after it reclassified benefits based on LeVeque's signing the reemployment plan on January 28. The Board did not believe LeVeque's testimony that he terminated reemployment efforts when he began to pay PTD benefits because it was not consistent with other evidence, and the Board alone has the power to determine the credibility of witnesses.[24] LeVeque never explained why he changed the benefits to PTD when he did; he merely testified that nothing Beconovich did caused him to reclassify the benefits. The Board also found that even though NC Machinery had reclassified the benefits as PTD benefits on January 23, it just as easily could have reclassified them later if the reemployment benefits process was successful. Because an employee cannot be considered permanently totally disabled as long as he is involved in the rehabilitation process,[25] any attempt by NC Machinery to prolong the reemployment process could reasonably be seen as an attempt to undermine Moore's PTD claim.

The second element that must be shown in a subsection .145(b) attorney's fees claim is that the claimant "employed an attorney in the successful prosecution of the claim." The Board decided based on its "review of the unique facts of this case," that it could not find that the employer would have provided PTD benefits to the employee at the time it did, "but for the representation of the employee by Mr. Beconovich." NC Machinery attacks the Board's conclusion that Moore's attorney played any role in securing PTD benefits for Moore. It alleges that Beconovich "did absolutely nothing prior to his client receiving PTD benefits" and was merely "lurking" in the background, expending effort only to get an award of attorney's fees.

Again, we find that the Board's conclusion is supported by substantial evidence. Beconovich filed a claim on Moore's behalf. Although NC Machinery had already changed the benefits to PTD by the time the claim was filed with the Board, the filing of the claim forced NC Machinery to decide whether to admit PTD liability to the Board or contest it. It chose to admit it. Without the filing of the claim, however, NC Machinery could, as the Board observed, have simply reclassified Moore's benefits at a later date. Mrs. Moore's testimony provided additional evidence about Beconovich's work on the case.[26] Beconovich also wrote to the rehabilitation specialists and told them to close the reemployment benefits file. By doing this, he ensured that his client could be considered permanently totally disabled, as Moore would no longer be involved in the rehabilitation process.[27]

The Board found that LeVeque did not reclassify the benefits as PTD voluntarily but instead did so "in the face of an impending claim for those benefits by an experienced attorney." It further found that Beconovich played a significant, if not decisive role, in Moore's receipt of PTD benefits. NC Machinery contends that there is no evidence to

---

**21.** AS 23.30.145(b).

**22.** *Thompson v. Alyeska Pipeline Serv. Co.*, AWCB Decision No. 98–0315 (December 14, 1998).

**23.** *See McGee v. State*, 614 P.2d 800, 805–06 n. 10 (Alaska 1980).

**24.** AS 23.30.122.

**25.** AS 23.30.041(k).

**26.** In its pleadings before the Board, NC Machinery conceded that Beconovich had provided valuable information and assistance to the Moores in the form of counseling before entering an appearance in the case.

**27.** AS 23.30.041(k).

support the Board's conclusions. But the Board can base its decision not only on direct testimony, but also on "the Board's experience, judgment, observations, unique or peculiar facts of the case, and inferences drawn from all of the above."[28] The Board could thus permissibly decide that Beconovich's representation of Moore resulted in the PTD award based either on Moore's "unique facts" or on its own experience of adjuster's reactions to the presence of a claimant's attorney.

The Board also made a finding that NC Machinery was aware that Moore had retained Beconovich for about a year before PTD benefits were paid. NC Machinery does not dispute that this finding is supported by substantial evidence; instead, it seems to read the Board's remark as a finding that the letter served as a formal entry of appearance, and it challenges the correctness of this "finding." But the argument made by NC Machinery that a formal entry of appearance is required under Board regulations is not material to the Board's decision. Even if NC Machinery is correct and the letter cannot serve as an entry of appearance, there is substantial evidence in the record to support the Board's conclusion that NC Machinery knew Beconovich was representing Moore. A reasonable mind could conclude that the letter should have alerted NC Machinery to the presence of an attorney in the case. Mrs. Moore testified that LeVeque had expressed concern about communicating with her because of Beconovich's involvement. Others involved in the case understood that Beconovich was assisting Moore: Dr. Craig, NC Machinery's expert, provided his report directly to Beconovich, and the vocational rehabilitation specialists also supplied a copy of their report to Beconovich before the reclassification of benefits. Mrs. Moore testified that she tried to inform everybody who had any interest in the case about Beconovich's representation. Thus, the Board's findings that NC Machinery was aware of Beconovich's involvement and that the attorney's actions played a significant role in facilitating Moore's receipt of PTD benefits are supported by substantial evidence. Because the Board made findings based on substantial evidence that satisfied both requirements for an award of attorney's fees pursuant to AS 23.30.145(b), Moore is entitled to reasonable attorney's fees in this case.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the superior court's decision affirming the Board and REMAND the case to the Board for a determination of what reasonable fees are due under AS 23.30.145(b).

---

28. *Kodiak Oilfield Haulers v. Adams,* 777 P.2d 1145, 1151 (Alaska 1989) (citing *Fairbanks N. Star Borough v. Rogers & Babler,* 747 P.2d 528, 533 (Alaska 1987)); *cf.* 7 Arthur Larson & Lex K. Larson, Workers' Compensation Law §§ 127.05[3] & 128.01 (2006).