NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MARK A. MCALPINE, ) | |
| ) | Supreme Court No. S-16636 |
| Appellant, ) | |
| ) | Alaska Workers' Compensation |
| v. ) | Appeals Commission No. 15-030 |
| ) | |
| DENALI CENTER and SENTRY ) | MEMORANDUM OPINION |
| INSURANCE, a Mutual Company, ) | AND JUDGMENT* |
| ) | |
| Appellees. ) | No. 1672 – April 4, 2018 |
| ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Mark A. McAlpine, pro se, and Kelly Giese, nonattorney representative at oral argument, Milton, Washington, for Appellant. Zane D. Wilson, CSG, Inc., Fairbanks, for Appellees.

Before: Stowers, Chief Justice, Maassen, Bolger, and Carney, Justices. [Winfree, Justice, not participating.]

## I. INTRODUCTION

A worker injured his back at work. During the workers' compensation process, the reemployment benefits administrator found the worker eligible for reemployment benefits based on a prediction of permanent impairment, and a reemployment plan was prepared. The plan was not approved, however, and later the

---

\* Entered under Alaska Appellate Rule 214.

employer asked the Alaska Workers' Compensation Board to terminate reemployment benefits when its doctor gave the worker a zero percent impairment rating. The Board terminated reemployment benefits after a hearing, and the attorney who had represented the worker withdrew from the case. Over a year later the worker, representing himself, asked the Board to modify its decision and reinstate his reemployment benefits. The Board refused to do so on the basis that the statutory time limit for modification had passed. It also decided in the alternative that the worker did not meet the substantive standards for modification. The Alaska Workers' Compensation Commission affirmed the Board's decision. We affirm the Commission's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Injury And Medical Summary

Mark McAlpine worked at Denali Center in Fairbanks in May 2009 when he injured his lower back helping a patient move into a chair. He was initially treated by a chiropractor but later began treatment by medical doctors. By the time the case became more contested, in late 2010 to early 2011, McAlpine's medical condition had not improved as much as doctors anticipated. McAlpine had undergone chiropractic care, multiple rounds of testing, injections, and a microdiscectomy followed by physical therapy. His symptoms did not improve, however, and in some ways got worse. His treating physician was Dr. Paul Jensen of Alaska Neuroscience Associates, and he was also seen by Jan DeNapoli, a physician assistant there.

McAlpine underwent several employer independent medical evaluations (EIMEs), the first in August 2009 and the second in April 2010. These EIMEs were done by different physicians.[1] The first two indicated McAlpine's work injury was the

---

[1]    The first EIME physician no longer did EIMEs by the time of the second EIME.

substantial cause of his disability and that the treatment he was receiving was generally appropriate.

A third EIME doctor, Dr. John Joosse, had a different opinion. Dr. Joosse first saw McAlpine in December 2010. He thought the substantial cause of McAlpine's disability was "development of a pain syndrome and behavioral issues." Dr. Joosse diagnosed McAlpine with a lumbar strain but recommended a thorough neurological evaluation because results of earlier neurological testing were not available to him, but he also thought there was "a psychological component . . . in this case." Dr. Joosse did not rate McAlpine for a permanent partial impairment (PPI) the first time he examined him; while he thought McAlpine was "probably" medically stable, he wanted to see what neurological testing showed.[2]

In January 2011 DeNapoli confirmed to Denali Center an earlier prediction that McAlpine would reach medical stability in late September 2010 and informed Denali Center that Dr. Jensen would not do a PPI rating. Although Alaska Neuroscience Associates chart notes from March 2011 indicated that clinic staff would order a rating with Dr. Richard Cobden, whom McAlpine had selected to rate him, that rating was apparently never obtained.

Dr. Joosse wrote a second EIME report in September 2011. He reviewed more records and again examined McAlpine. In the second EIME Dr. Joosse said McAlpine described having had a neurological evaluation shortly after the 2009 injury, but the EIME report indicated that no records of any neurological evaluation were

---

[2] McAlpine had undergone neurological testing in June 2010, and many of the testing records are in the Board file together with a physician's report form dated June 30, 2010. The physician's report form and the medical records in the record show they were received by the Board in Juneau on July 2, 2010. Copies of the imaging studies themselves were evidently not submitted to the Board at that time.

available for review. In Dr. Joosse's opinion, "McAlpine's complaints likely have a psychological component," but any need for psychological treatment was not work-related. Dr. Joosse then evaluated McAlpine for a PPI. "Absent the neurological testing report, or assuming that neurological testing provides for no evidence of radiculopathy or neuropathy," Dr. Joosse rated McAlpine as having a zero percent impairment under the medical reference required by the Alaska Workers' Compensation Act (Act).[3]

In November 2011 Denali Center controverted McAlpine's medical benefits. In January 2012, when more medical records became available, including those related to McAlpine's June 2010 neurological testing and accompanying imaging, Dr. Joosse wrote another EIME report consisting only of medical records review. The testing showed no pain response, but imaging notes indicated that at two levels the disc morphology was "abnormal." Dr. Joosse thought the abnormal test results represented degenerative changes. He described the results of the testing as showing that McAlpine was "neurologically intact." (Emphasis omitted.) Dr. Joosse confirmed his prior opinion that the substantial cause of McAlpine's disability was "a pain syndrome, which is likely psychiatric in nature." He also confirmed his earlier zero percent PPI rating.

In February 2012 Denali Center sent a copy of Dr. Joosse's January 2012 EIME report to Alaska Neuroscience Associates asking whether Dr. Jensen "concur[red] with [Dr. Joosse's] findings." The form indicates agreement and bears DeNapoli's signature. No comments or explanation accompanied the signature.

## B. Procedural History Related To This Appeal

In November 2009, several months after the injury, the Division of Workers' Compensation referred McAlpine for a reemployment benefits eligibility

---

[3] *See* AS 23.30.190.

evaluation.[4]   The evaluator thought McAlpine was eligible based on his doctor's prediction that he would have a permanent impairment, and in January 2010, the Division notified McAlpine he was eligible for reemployment benefits.  Denali Center did not contest McAlpine's eligibility, and McAlpine chose Tom Hutto as his rehabilitation specialist.

Hutto developed a reemployment plan for McAlpine to become a teacher's aide, but the rehabilitation benefits administrator (RBA) denied it, in part because information available to the RBA suggested the selected job did not meet the minimum wage level required by statute.[5]  No one appealed the denial of this plan.  Denali Center controverted payment to Hutto after the first plan denial but did not controvert McAlpine's continued eligibility for benefits.[6]

Hutto later revised the reemployment plan but did not change the selected job; he submitted the revised plan in March 2011.  The RBA again denied the plan.

---

[4]     Under AS 23.30.041(c), when an employee "is totally unable to return to the employee's employment for 60 consecutive days as a result of [a work-related] injury, the employee or employer may request an eligibility evaluation."  In McAlpine's case, the evaluation was requested by the employer, Denali Center.

[5]     "The goal of reemployment plans is to 'ensure[] remunerative employability in the shortest possible time.' " *Rockney v. Boslough Constr. Co.*, 115 P.3d 1240, 1242 (Alaska 2005) (quoting AS 23.30.041(i)).  "Remunerative employability" is defined as "having the skills that allow a worker to be compensated with wages or other earnings equivalent to at least 60 percent of the worker's gross hourly wages at the time of injury."  AS 23.30.041(r)(7).  Entry-level wages are used to measure remunerative employability.  *See Rockney*, 115 P.3d at 1242-43.

[6]     Hutto and Denali Center engaged in litigation related to this controversion, but that litigation is not relevant to the issues raised here.

McAlpine, now represented by attorney J. John Franich,[7] filed a written claim in April 2011 appealing the RBA's rejection of the second revised reemployment plan. At this point, McAlpine was considered medically stable by his surgeon and had requested a referral to Dr. Cobden for an impairment rating. Dr. Joosse had not yet rated McAlpine because Dr. Joosse thought neurological testing was needed.

Denali Center petitioned to terminate McAlpine's reemployment benefits in November 2011 based on Dr. Joosse's September 2011 EIME and controverted his medical benefits the same day. A prehearing conference summary from January 2012 indicates that Denali Center thought a second independent medical evaluation (SIME) would be appropriate. Denali Center said it would continue to pay McAlpine's reemployment stipend benefits[8] "but [would] not lift its controversion on medical benefits."

In January 2012 McAlpine, through Franich, filed a written workers' compensation claim requesting medical benefits and continuing ".041(k) benefits" for McAlpine. In February 2012 the parties stipulated to an SIME, identifying several disputes, including McAlpine's degree of impairment, but shortly thereafter DeNapoli signed the form letter from Denali Center indicating agreement with Dr. Joosse's evaluation. After receiving the signed letter, Denali Center took the position that an SIME was no longer warranted because there were no longer any medical disputes.

---

[7]     Franich also represented Hutto in his claim related to McAlpine's case.

[8]     Under AS 23.30.041(k), a worker may be entitled to a stipend benefit during the time he is engaged in the reemployment process. *See also Carter v. B & B Constr., Inc.*, 199 P.3d 1150, 1158-60 (Alaska 2008) (interpreting AS 23.30.041(k) and holding "that the reemployment process begins when the employee begins his active pursuit of reemployment benefits").

Franich indicated he would file a petition for an SIME if his inquiries to Dr. Jensen's office showed one was needed. The Board set a hearing on Denali Center's petition to terminate benefits.

The Board held an oral hearing in June 2012 about the petition to terminate reemployment benefits. Denali Center did not call any witnesses and made a straightforward argument that the doctors concurred that McAlpine did not have a rateable permanent impairment. In response, Franich first noted that McAlpine was found eligible for reemployment benefits on January 5, 2010, and had continued to receive them; he then said, somewhat cryptically, "We don't get, at this late point in time, to go back and reevaluate whether that was the right thing to do back then." He argued that Dr. Joosse's opinions should be disregarded because Denali Center had changed EIME physicians too many times, and thus under a Board regulation, those records could not be considered.[9] He contended that DeNapoli's signature on the form asking whether Dr. Jensen concurred with Dr. Joosse's evaluation was "inconsistent with [Dr. Jensen's] earlier statements and earlier conclusions," and he suggested an SIME might still be helpful. McAlpine testified briefly about his last visit with Dr. Jensen, which occurred about a month before medical benefits were controverted, as well as his current medical condition.

The Board's November 2012 decision treated Denali Center's petition as a request to modify the reemployment eligibility decision: it asked whether the RBA's 2010 eligibility determination should be modified, and quoted AS 23.30.130(a), the statutory subsection about modifications, in the decision. Ultimately the Board decided

---

**9** *See* 8 Alaska Administrative Code (AAC) 45.082(c) (2017) (providing that the Board cannot consider a doctor's "reports, opinions, or testimony" if the Board finds, after a hearing, that the party offering that doctor's opinion violated statutory or regulatory restrictions on changing doctors).

DeNapoli's signature on the letter indicated Dr. Jensen agreed with Dr. Joosse's zero percent impairment rating, which showed "a change in the opinion of [McAlpine's] treating physician on . . . those issues that served as the basis for the RBA determination." The Board decided there had been a change in circumstances such that McAlpine was no longer eligible for reemployment benefits.[10] The Board granted Denali Center's petition and modified the 2010 reemployment benefits eligibility determination. The Board's decision informed the parties that they could seek modification of its decision "[w]ithin one year of the rejection of a claim, or within one year after the last payment of benefits under AS 23.30.180, 23.30.185, 23.30.190, 23.30.200, or 23.30.215." It also informed the parties how to request reconsideration or petition for review of the decision.

After the Board decision terminating McAlpine's reemployment benefits, Denali Center filed a notice of controversion in December 2012 that controverted "[a]ll rehabilitation benefits." The controversion, on a Board form, gave notice to McAlpine that if he "disagree[d] with the denial," he needed to "file a timely written claim," referring him to a section of the form about relevant deadlines.

In January 2013 Franich wrote a letter to Dr. Jensen inquiring about medical stability and causation. The doctor's responses were equivocal: he thought McAlpine had a "partial disability" and said the work-related injury was the substantial cause of the disability. But Dr. Jensen also thought functional and psychological factors were complicating treatment and evaluation. Franich wrote to McAlpine in March 2013 to say he was withdrawing as his attorney. He told McAlpine that "no proceedings"

---

[10] Under AS 23.30.041(f)(4), "[a]n employee is not eligible for reemployment benefits if . . . at the time of medical stability, no permanent impairment is identified or expected."

were then pending before the Board and filed the notice of withdrawal on March 29, 2013.

At some point in early 2013 McAlpine visited Dr. Jensen to discuss the signature on the form letter agreeing with the EIME report. According to McAlpine, Dr. Jensen denied signing the letter and said he did not agree with it. Correspondence in the record suggests that McAlpine attempted in 2013 to contact DeNapoli and also complained to the State Medical Board.

McAlpine moved to Washington in 2013. An October 2013 medical report from Washington showed some abnormalities at the L4-L5 level of his spine. McAlpine signed a new workers' compensation claim on October 29, 2014; the Board received it on November 7 and served it on Denali Center the same day. McAlpine said his doctor in Washington thought he needed another surgery and asked the Board for "back payment" of benefits. His claim sought review of a "Reemployment Benefit Decision," with boxes for both eligibility and plan review checked.[11]

Denali Center raised several affirmative defenses, including res judicata or collateral estoppel with respect to the reemployment benefits. In December 2014 McAlpine separately petitioned the Board to vacate the November 2012 decision because "Dr. Jensen stated that he did not sign the order that agreed with Dr. Joos[s]e's disposition." McAlpine also contended that other physicians had not considered him medically stable and that Dr. Jensen had a conflict of interest because he was employed by Denali Center. Denali Center objected to the request to vacate the November 2012 decision, arguing that pursuant to AS 23.30.130, the deadline for modification expired a year following the decision.

---

[11] The 2014 claim is not at issue in this appeal. As the Commission noted, its decision under review in this appeal did "not address any issues in Mr. McAlpine's 2014 [workers' compensation claim]."

In February 2015 a non-attorney representative, Kelly Giese, entered an appearance on McAlpine's behalf. In July 2015 the Board held a hearing related to modification or vacation of its order terminating reemployment benefits. The Board said it was considering only the December 2014 petition to vacate, not the October 2014 workers' compensation claim.

At the hearing Giese indicated she and McAlpine had been advised by attorneys and the Board that they needed to file something within two years of the November 2012 decision, and Giese said she had been told by a Board employee that the workers' compensation claim filed in October 2014 was "adequate" "to make sure that [McAlpine's] case didn't get closed out." She told the hearing chair that she and McAlpine "had asked . . . the workmen's comp office what [they] needed to do to get this rolling because [they] couldn't find a lawyer," and the office told them they "needed to send in what [they] had sent in."[12]

Most of the hearing was argument or some type of explanation from Giese about her and McAlpine's efforts to reopen the case and gather information. McAlpine testified in narrative form about his contact with Dr. Jensen after the 2012 hearing. McAlpine and Giese evidently contacted DeNapoli, who, they alleged, denied having signed the form about agreeing with Dr. Joosse. At some point McAlpine and Giese were no longer able to contact DeNapoli, but Giese commented at the hearing that they could call Dr. Jensen but did not see the need to do so. Neither Dr. Jensen nor DeNapoli was a witness. The only witness Denali Center called was Molly Friess, the adjuster. Friess testified that Denali Center had paid temporary total disability (TTD) until

---

[12] From context, Giese appears to be referring to the October 2014 claim form.

February 2011 and stipend benefits after that until the Board order terminating reemployment benefits in November 2012.[13]

In its October 2015 decision the Board denied McAlpine's request to vacate the November 2012 decision. The Board decided that the November 2012 decision had correctly informed McAlpine of the deadlines to request reconsideration or modification or to take an appeal and that his request in 2014 was too late, no matter what anyone had told McAlpine or Giese. It also engaged in a substantive analysis of the factual dispute and decided that none of the evidence presented suggested that the November 2012 decision was wrongly decided.

McAlpine appealed to the Commission. The Commission affirmed the Board's decision, deciding first that the request for modification was filed too late. The Commission said the "Board's authority to modify a decision is strictly controlled by AS 23.30.130(a)" and quoted part of the statutory language with the words "one year" underlined. According to the Commission, McAlpine "had until November 2013 to file a petition for modification" but "did not file anything until December 15, 2014." The Commission said there was "no basis for extending the time limit" due to McAlpine's self-represented status because he was represented by counsel "during a significant portion of the time for filing either an appeal or petition for modification." The Commission concluded that substantial evidence supported the Board's decision to deny the modification request as untimely.

The Commission also said that even if the petition had been timely filed, McAlpine "ha[d] not provided sufficient evidence to allow for modification of the

---

[13] This testimony is inconsistent with the compensation reports. In February 2011 Denali Center reclassified McAlpine's benefits from TTD to .041(k) stipend benefits, decided it had overpaid benefits, and recovered the overpayment by reducing the .041(k) benefits.

November 2012 decision" because (1) the November 2012 decision dealt only with reemployment benefits and (2) at the time of the hearing that led to the November 2012 decision, Dr. Joosse's EIME with a zero percent impairment rating and the letter concurring with that EIME were "uncontradicted in the record." The Commission also decided that substantial evidence supported the Board's finding that the form response to the adjuster's question "was stamped signed by" the physician assistant.

McAlpine appeals.

## III.   STANDARD OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals Commission, "we review the Commission's decision rather than the Board's."[14] "Interpretation of a statute is a question of law to which we apply our independent judgment; we interpret the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[15] In an appeal from the Commission, "[w]e review de novo the Commission's legal conclusion that substantial evidence supports the Board's factual findings by 'independently review[ing] the record and the Board's factual findings.' "[16]

## IV.   DISCUSSION

### A.   The Commission Correctly Determined That McAlpine's Petition To Vacate The Decision Was Untimely.

McAlpine seeks to vacate the Board's November 2012 decision, which

---

[14]     *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014).

[15]     *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014).

[16]     *Huit v. Ashwater Burns, Inc.*, 372 P.3d 904, 912 (Alaska 2016) (second alteration in original) (quoting *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009)).

granted Denali Center's request to modify the reemployment eligibility decision. The decision set out the one-year period for modification in AS 23.30.130(a).[17] At the time of the decision, McAlpine was represented by counsel, who evidently attempted during the time shortly after the decision to gather information relevant to modifying the claim. Ultimately McAlpine's attorney withdrew about four months after the decision was issued, but McAlpine nonetheless was aware of the need to gather information about Dr. Jensen's opinion promptly, as evidenced by his testimony that he contacted Dr. Jensen in early 2013 to discuss the signature showing agreement with the EIME report. Correspondence in the record also indicates that McAlpine attempted in 2013 to contact DeNapoli.

McAlpine testified that when he visited Dr. Jensen to discuss the signature on the form letter agreeing with the EIME report, Dr. Jensen denied signing the letter and said he did not agree with it. At this time, McAlpine asked Dr. Jensen to both print and sign his name as evidence that the signature indicating agreement with Dr. Joosse was not Dr. Jensen's signature, which Dr. Jensen did. The date next to the signature is from early 2013, but McAlpine filed nothing with the Board until fall 2014, well after the one-year deadline set out in the Board's decision. McAlpine does not explain why he did not seek modification of the November 2012 decision earlier, nor does he explain why he did not ask Dr. Jensen to put in writing his disagreement with Dr. Joosse's opinion when they spoke in early 2013. Even though McAlpine's conversation with Dr. Jensen happened while McAlpine was still represented, he offers no reason he did not ask for modification either after the conversation or after his attorney withdrew in March 2013.[18]

---

[17]    There may be an argument that the Board and the Commission misconstrued this statute, but McAlpine did not raise the argument in this appeal.

[18]    Any dissatisfaction McAlpine has with his attorney cannot be resolved in
(continued...)

McAlpine argues that the Board had an obligation to inform him of the procedural deadline and that when he asked the Board about a deadline for keeping his claim viable, he was told he had two years from the controversion. He points out that many of the deadlines set out in the statute have a two-year deadline and that even the controversion notice Denali Center filed in December 2012 indicated there was a two-year time limit on filing a claim related to the controversion.

There is no evidence in the record demonstrating that the Board misled McAlpine about the deadline for modifying the November 2012 decision. The November 2012 decision included clear language providing for a one-year modification deadline and cited to the relevant statutory provision, and McAlpine was represented at that time. The Board provided information to McAlpine about filing the 2014 claim for medical and other benefits, which is not at issue in this appeal and had evidently not been decided at the time of the Commission's decision in this case. Thus, McAlpine still has a pending workers' compensation claim, which could yet be decided in his favor. Even though the controversion notice set out a two-year deadline related to the controversion, McAlpine was represented by counsel at the time the notice was filed, and nothing in the record suggests that anyone told McAlpine the controversion notice displaced or superseded the modification deadline set out in the Board's decision.

McAlpine argues that the Board and Commission should have looked at the workers' compensation claim he filed in October 2014, which was within two years of the controversion of reemployment benefits, instead of the petition to vacate, which he filed in December 2014, to determine the timeliness of his attempt to reopen the earlier reemployment benefits decision. The distinction is not important to the modification

---

[18]     (...continued)
this case.

question because both the written claim and the petition were filed more than a year after the November 2012 decision, which set out the one-year modification provision in AS 23.30.130(a).

**B. McAlpine Did Not Meet The Substantive Requirements For Modification.**

Although the Commission decided McAlpine had missed the deadline to reopen the decision that terminated his reemployment benefits, it also engaged in a substantive analysis and determined he had not met the requirements for modification of the November 2012 decision. We agree that McAlpine's request to modify the decision terminating reemployment benefits did not meet the modification standards.

The Board's decision terminating McAlpine's reemployment benefits was based on Dr. Joosse's zero percent impairment rating and DeNapoli's apparent agreement with that rating.[19] To modify the Board's decision, McAlpine needed to present some evidence "of a change in conditions" or "a mistake in [the Board's] determination of a fact."[20] Because the November 2012 decision was based on a zero percent impairment rating, without some evidence that McAlpine in fact had a rateable impairment as defined in AS 23.30.190 that was caused by his work-related injury, there was no evidence the Board could use to reconsider its previous decision and reinstate McAlpine's reemployment benefits.[21]

---

[19]    McAlpine testified that DeNapoli denied having signed the letter, but as the Board observed, the signature on the letter matches her signature on other documents. Without testimony or a sworn statement from DeNapoli herself, the Board had no basis to question the authenticity of the signature.

[20]    AS 23.30.130(a).

[21]    *Cf. Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623-24 (Alaska 2007) (vacating and remanding for a hearing on the merits after employee provided a

(continued...)

On appeal, McAlpine chiefly argues that Dr. Joosse's conclusions were incorrect. But the June 2012 hearing preceding the Board's decision afforded him the opportunity to cross-examine Dr. Joosse and to present evidence to counter Dr. Joosse's conclusions about both the degree of his impairment and the relationship between his continuing disability and his work-related injury. If McAlpine had any doubts about the authenticity of DeNapoli's signature or the accuracy of the opinion expressed by that signature, those doubts could have been raised at the June 2012 hearing, but they were not. Alternatively McAlpine could have raised them in a modification petition soon after his attorney's withdrawal; both McAlpine and his attorney had gathered some additional evidence within a year of the November 2012 decision. Because McAlpine did not present evidence or testimony contradicting the zero percent rating, the Commission correctly decided his modification petition did not meet the substantive standards for modification.

C.    **The Commission Chair Did Not Have A Disqualifying Conflict Of Interest.**

McAlpine contends that the Commission chair was biased because of her past association with Denali Center's attorney's law firm. At oral argument before the Commission, the chair disclosed that in 1985 her law firm in Anchorage was affiliated with the law firm in Fairbanks that was representing Denali Center before the Commission and that the firms ended their association in the early 1990s. She said she had never actually practiced with the attorney appearing at the Commission hearing. McAlpine did not ask questions in response, even though the chair inquired whether he had any.

---

[21]    (...continued)
competing impairment rating).

McAlpine provides virtually no argument on this point. Hearing officer conduct generally is governed by AS 44.64.050 and the regulations implementing it, including the Code of Hearing Officer Conduct.[22] No regulation has a specific time limit that would require hearing officer disqualification due to a past association with an attorney appearing before the hearing officer.[23] One regulation does provide that "[c]ommentary on and decisions applying the Alaska Code of Judicial Conduct may be used as guidance" in interpreting the Code of Hearing Officer Conduct.[24] Under the Code of Judicial Conduct, a judge is required to disqualify herself if "a lawyer with whom the judge previously practiced law served during their association as a lawyer concerning the matter."[25] In other words, disqualification under the canon requires that the association between the judge and the attorney happen during the time of the attorney's involvement in the case before the judge. In this case, for the chair to have a disqualifying conflict of interest, her firm's association with Denali Center's firm would have to have happened after McAlpine's injury, at the very earliest. McAlpine was

---

[22]  *Rosales v. Icicle Seafoods, Inc.*, 316 P.3d 580, 589 (Alaska 2013). The Code of Hearing Officer Conduct can be found at 2 AAC 64.010-.090.

[23]  *See* 2 AAC 64.010-.090.

[24]  2 AAC 64.030(c).

[25]  Alaska Code of Judicial Conduct Canon 3(E)(1)(b); *cf.* AS 22.20.020(a)(8) (requiring disqualification when "the law firm with which the judicial officer was associated in the practice of law within the two years preceding the filing of the action has been retained or has professionally counseled either party with respect to this matter").

injured in 2009, long after the two firms ended their association. The Commission chair did not have a disqualifying conflict of interest and could hear and determine the case.[26]

## V.    CONCLUSION

We AFFIRM the Commission's decision.

---

**26**      To the extent McAlpine raises issues not discussed in this opinion, they have no merit.