*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RICHARD LOUIE, | ) | |
| | ) | Supreme Court No. S-15120 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 12-022 |
| | ) | |
| BP EXPLORATION (ALASKA), | ) | O P I N I O N |
| INC., and ACE USA, | ) | |
| | ) | No. 6914 – June 13, 2014 |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Commissioner Chair.

Appearances: Joseph A. Kalamarides, Kalamarides & Lambert, Anchorage, Appellant. Richard L. Wagg, Russell, Wagg, Gabbert & Budzinski, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I. INTRODUCTION

A highly paid worker suffered a debilitating stroke while traveling for his employer. The employer initially controverted benefits because it did not think the stroke was work related, but it later accepted the claim and paid workers' compensation benefits. The statutory maximum compensation rate at the time of the injury was $700 a week. A little more than five months after the employee's stroke, an amended version

of the Alaska Workers' Compensation Act took effect. Instead of an absolute maximum compensation rate, the amended statute set a variable rate indexed to the statewide average weekly wage. The employee asked for an increased rate of compensation, arguing that the law in effect at the time he was recognized as being permanently and totally disabled should govern his benefit amount. The Alaska Workers' Compensation Board, with one panel member dissenting, decided that the version of the statute in effect at the time of the injury was the applicable statute and consequently capped the employee's benefits at $700 a week for life. The dissenting panel member would have construed the statute as permitting increased benefits. The Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. The worker appeals, arguing that the amount of his benefits does not fairly compensate him for lost wages during the period of his disability so that the date of his disability, rather than the date of his injury, should be used to determine the version of the statute governing his claim. We affirm the Commission's decision.

II.     FACTS AND PROCEEDINGS

The facts in this case are largely uncontested. Richard Louie worked for BP Exploration (Alaska), Inc. (BP) as an auditor. At the time of his injury he earned in excess of $100,000 a year. In January 2000 he traveled to London, England, for a meeting; en route, he developed "an air travel [deep vein thrombosis]" in his leg, and a small clot eventually made its way to his brain, causing a debilitating stroke. He is now paralyzed on one side of his body and suffers from aphasia and muscle spasms.

After initially controverting Louie's claim, BP accepted that the stroke was work related. According to the compensation report dated September 12, 2002, BP was paying temporary total disability (TTD) at the rate of $700 a week. The parties later entered into a partial compromise and release (C & R) agreement related to occupational, physical, and speech therapy; the Board approved the partial C & R in early 2004. The

partial C & R acknowledged that Louie was unlikely to return to work, but it left open reemployment benefits. The partial C & R also acknowledged that BP had paid Louie TTD from September 2002 to December 2003 (approximately the time the agreement was signed) and agreed that Louie's "total disability rate is $700."

Louie filed a workers' compensation claim in October 2011 seeking a compensation rate adjustment and permanent total disability (PTD) benefits. In its answer BP raised the defense that Louie had received, "from his date of injury and continuing," PTD benefits "at the maximum compensation rate allowable under the Act as it existed in the year of the employee's injury."

At the hearing on the claim, Louie presented testimony from Curtis Smith, a former co-worker with approximately the same employment history as Louie. Smith testified that, had Louie continued to work at BP, Louie's gross salary with bonuses would have been approximately $300,000 a year, plus benefits such as 401(k) contributions. Louie's wife testified that in the months following the stroke, she and Louie thought there was still some chance he would be able to return to work because, in spite of his initially severe condition, he made rapid progress in therapy.

The Board panel issued a split decision in the case, with the majority deciding that Louie was not entitled to increased benefits. The Board decided that the version of the statute in effect at the time of injury should govern the case, citing a number of cases from this court to support its decision. The Board determined that Louie was already receiving the maximum benefit he was permitted under law and denied his petition for a compensation rate adjustment. The Board chair dissented. She relied on the policy that workers' compensation is intended to replace workers' wages during the time of disability and wrote that the policy compromise under workers' compensation "is achieved only when an injured worker's compensation rate fairly approximates his

probable future earning capacity lost due to injury."[1] She relied on earlier cases from this court to construe the statute as requiring a departure from "the mechanical formula" for calculations when the result was grossly unfair. Using reasoning similar to that found in *Peck v. Alaska Aeronautical, Inc.*,[2] she said that the conclusion the legislature authorized departure from the general formula was "supported by the legislature's alternative computation method in AS 23.30.220."[3] The dissent provided a statutory analysis to support the conclusion that Louie's compensation rate should be increased.

On appeal the Commission affirmed the Board's decision. The Commission said that the only way to reach the conclusion that Louie was entitled to increased benefits was to construe "date of injury" in the current version of AS 23.30.175

---

[1]    The dissent explained:

> The court has held the "essential component of the basic compromise underlying the Workers' Compensation Act[,] the worker's sacrifice of common law claims against the employer in return for adequate compensation without the delay and expense inherent in civil litigation," is achieved only when an injured worker's compensation rate fairly approximates his probable future earning capacity lost due to injury. *Flowline of Alaska v. Brennan*, 129 P.[3]d 881, 883 (Alaska 2006); *Gilmore v. Alaska Workers' Compensation Board*, 882 P.2d 922, 927 (Alaska 1994).

[2]    756 P.2d 282, 287-88 (Alaska 1988).

[3]    AS 23.30.220(a)(10) permits the Board to depart from the general formula for calculating spendable weekly wage if the result from applying the general formula does not accurately reflect the employee's earnings. An employee's spendable weekly wage is used as a base amount for calculating his workers' compensation rate. AS 23.30.220(a).

to mean "date of disability,"[4] and to find that Louie's disability started after July 1, 2000. The Commission declined to do so. The Commission noted that even under an analysis that increased Louie's compensation rate, the weekly amount did not "bear any reasonable relationship to his actual or predicted income." It decided that no matter how Louie's spendable weekly wage was calculated, the statutory cap of $700 in place at the time of his injury prevented him from getting increased benefits. Louie appeals.

## III. STANDARD OF REVIEW

This appeal presents an issue of statutory construction. Interpretation of a statute is a question of law to which we apply our independent judgment; we interpret the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.[5]

## IV. DISCUSSION

**The Commission Did Not Err In Deciding That The Maximum Compensation Rate Set Out In Former AS 23.30.175(a) Applied.**

Although AS 23.30.180 provides that when an injured worker is found permanently and totally disabled "80 percent of the injured employee's spendable weekly wages shall be paid to the employee during the continuance of the total disability," actual computation of permanent total disability (PTD) rates is governed by

---

[4]     *Cf. Johnson v. RCA-OMS, Inc.*, 681 P.2d 905, 908 (Alaska 1984) (noting that this rationale for decision made it unnecessary to decide whether "time of injury" meant "time of disability due to injury").

[5]     *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003) (citing *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

AS 23.30.220, which deals with spendable weekly wages,[6] and AS 23.30.175, which sets compensation rates.

On January 27, 2000, the date of Louie's stroke, AS 23.30.175(a) provided that the maximum weekly compensation rate was $700.[7] This statutory subsection was amended in 2000, with an effective date of July 1, 2000.[8] Louie's main argument is that the version of section .175 in effect at the time of his permanent total disability, which he says is the time of the 2004 partial C & R, should govern his rate of compensation rather than the version of the statute in effect at the time of his injury. BP argues that the version of the statute in effect at the time of injury should be applied; because former AS 23.30.175(a) capped benefits at $700 a week at the time of Louie's stroke, it contends he is only entitled to $700 a week "for the lifetime of his disability related to this injury," which in his case is probably for life.

The Alaska Workers' Compensation Act has a provision for calculating a worker's spendable weekly wage, which is the base amount for benefit calculations,[9] but the Act also sets out statutory maximum and minimum benefits.[10] Alaska Statute 23.30.220(a)(10) permits the Board to vary the method used to calculate the spendable weekly wage of an employee who is permanently and totally disabled when

---

[6]    "An employee's spendable weekly wage is the employee's gross weekly earnings minus payroll tax deductions."  AS 23.30.220(a).

[7]    Former AS 23.30.175(a) (1998) ("The weekly rate of compensation for disability or death may not exceed $700 . . . .").

[8]    Ch. 105, SLA 2000.  AS 23.30.175(a) as amended in 2000 caps benefits at a percentage of the statewide average weekly wage.

[9]    AS 23.30.220.

[10]    AS 23.30.175.

calculation under other subsections "does not fairly reflect the employee's earnings during the period of disability." In such cases, the statute permits the Board to consider a number of factors, but it limits the "compensation calculated under this paragraph" to "the employee's gross weekly earnings at the time of injury."[11] Alaska Statute 23.30.220 has not been amended since the time of Louie's injury. At the time of injury Louie's gross weekly earnings were $2,301.69.[12]

When the legislature changed the maximum benefit amount in 2000, the Director of the Division of Workers' Compensation told the legislature that workers' compensation benefits had not increased in about 12 years and said the bill provided "needed increases in benefits for injured employees."[13] There is no indication that the legislation was intended to have retroactive application in either the statutory language[14] or the legislative history, and Louie does not argue that it should be construed as having retroactive application. He argues instead that the version of the law in effect at the time both parties acknowledged that he was permanently and totally disabled should govern.[15]

---

[11] AS 23.30.220(a)(10).

[12] The record does not contain a calculation of spendable weekly wage for Louie's claim, possibly because his income was high enough that he was simply eligible for maximum benefits at the time.

[13] Minutes, H. Labor & Commerce Comm. Hearing on H.B. 419, 21st Leg., 2d Sess. No. 2275 (Mar. 8, 2000) (testimony of Paul Grossi, Director, Division of Workers' Comp.).

[14] AS 01.10.090 provides, "No statute is retrospective unless expressly declared therein."

[15] Louie identifies 2004, when the partial C & R was signed and approved, as the applicable date. The parties agreed in 2002 (in pleadings) that he was permanently and totally disabled as of the date of injury, January 27, 2000, but no compensation

(continued...)

Louie bases his claim largely on *Peck v. Alaska Aeronautical, Inc.*[16] *Peck* involved the compensation rate for a pilot who was initially injured in a plane crash in 1964 but returned to work and continued working until his medical certificate was withdrawn in 1982 because of medication he was taking for the 1964 injury.[17] At the time of his injury he earned $255 a week; at the time of his permanent disability 18 years later, he was earning more than $1,200 a week.[18] At the time of the 1964 injury AS 23.30.175(b), the maximum compensation rate statute, provided that "in computing compensation for permanent total disability, the average weekly wages are considered to have been not more than $81."[19] The Board interpreted this provision as capping the average weekly wage, on which it based the PTD award, at $81, and it awarded Peck only $52.65 a week in benefits.[20] One of Peck's arguments on appeal was "that the law in effect at the time of the employee's disability, instead of that in effect at the time of injury, should be applied to determine an employee's benefits under the Alaska Worker[s'] Compensation Act."[21] But we did not use that rationale for our decision, deciding instead that the version of AS 23.30.175(b) in effect at the time of injury could

---

[15]     (...continued)
report in the record shows a reclassification of benefits.

[16]     756 P.2d 282 (Alaska 1988).

[17]     *Id.* at 284.

[18]     *Id.*

[19]     *Id.* (quoting former AS 23.30.175(b)) (internal quotation marks and alterations omitted).

[20]     *Id.*

[21]     *Id.*

not be construed "with certainty" as containing a maximum limitation.[22] The Board was instructed to "calculate Peck's claim under the 1964 version of AS 23.30.220(3)" — the statute governing calculation of spendable weekly wage — because application of the $81 limit on the average weekly wage would lead to a grossly unfair result.[23] The 1982 version of the statute was not applied to the claim.[24]

According to the leading treatise on workers' compensation law, the general method for calculating the amount of benefits to which a worker is entitled is to use a wage formula, and after applying the wage formula, to consider whether the result is subject to maximum limits.[25] Alaska follows this general rule.[26] As we explained in *Wien Air Alaska v. Arant*,[27] the first step involves calculation of the weekly wage and the percentage of that wage to which the employee is entitled; the second step "specifies a maximum limitation on the weekly award. If the result of the step one calculation, the dollar amount which represents the per cent of the worker's wage, is greater than the maximum limitation, *the claimant receives only the maximum limitation*."[28] *Arant*

---

[22] *Id.* at 288. The statute in effect in 1964 did not have a specific maximum dollar amount for the compensation rate. Former AS 23.30.175(a) (1962).

[23] *Id.*

[24] *See id.* at 286-88.

[25] 5 ARTHUR LARSON & LEX K. LARSON, WORKERS' COMPENSATION LAW § 93.04[1] (2013).

[26] *See, e.g.*, *Seward Marine Servs., Inc. v. Anderson*, 643 P.2d 493, 493 (Alaska 1982) (describing computation of death benefits).

[27] 592 P.2d 352 (Alaska 1979), *overruled on other grounds by Fairbanks N. Star Borough Sch. Dist. v. Crider*, 736 P.2d 770, 775 (Alaska 1987).

[28] *Id.* at 354 (emphasis added).

involved death benefits from a plane crash that killed a pilot, so we did not need to consider different versions of the governing statutes.[29]

Louie argues that sections .220 and .175 conflict because subsection .220(a)(10) does not permit an employee's compensation rate to exceed his gross weekly earnings at the time of injury. He interprets this provision as "an upper limit which exceeds the compensation rate limitation under AS 23.30.175(a) at the time of the injury." But in our view, these sections do not conflict because they concern two distinct steps in benefit calculation. Alaska Statute 23.30.220 governs the first step of a two-step process — determining the employee's spendable weekly wage. Variation in calculating spendable weekly wage is needed because the formula may produce lower benefit amounts than are warranted in certain circumstances.[30] Capping the amount of compensation under the alternative formula at the amount of actual gross earnings removes any incentive to be found disabled rather than return to work.[31] Step two of the two-step process is to apply the maximum or minimum set out in AS 23.30.175. Unless the statutory maximum in effect in January 2000 does not apply to Louie's claim, his compensation is capped at $700 a week at the second step, no matter how his wage is calculated in the first step; this amount will never exceed his gross weekly earnings at the time of his injury.

Louie claims that his gross weekly earnings as calculated under AS 23.30.220 do not accurately reflect his "earnings during the period of disability" so

---

[29]     *Id.* at 353-55.

[30]     *See Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 797 (Alaska 2002) (describing history of alternative methods of calculating wages in AS 23.30.220).

[31]     *Cf. Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 273 (Alaska 1984) (agreeing that State has interest in creating incentives for workers to return to work).

that he is entitled to a compensation rate adjustment under AS 23.30.220. This argument is based on evidence — which BP does not dispute — that, had he continued to work for BP, his income and other benefits would have continued to increase. The uncontested evidence showed that his income would have been approximately $300,000 a year, and BP would have had to put additional funds in his 401(k). But adjusting Louie's wage rate is irrelevant if the $700 statutory maximum in former AS 23.30.175(a) applies to him.

The $700 cap on benefits was enacted in 1988.[32] According to the legislative history, the 1988 legislation lowered the maximum benefit from approximately $1,100 a week and increased the minimum benefit.[33] An analysis of this section of the bill and public comments related to it noted that the "[m]ajority of workers are on the low end of the scale with less than 5% qualifying for weekly benefits in excess of $700/week."[34] According to a sectional analysis, the 1988 amendment to AS 23.30.175(a) created "an absolute maximum of $700 per week" and was intended to "provid[e] for a fixed maximum compensation rate which can be predicted."[35] This legislative history underlines the statutory language and shows that the legislature knew highly paid workers would receive lower benefits after disability.

---

[32] Ch. 79, § 30, SLA 1988.

[33] H. Labor & Commerce Comm., Workers' Comp. Legislation Comparative Analysis House & Senate Bills at 10, 15th Leg., 2d Session (Feb. 23, 1988) *in* Pat Wilson, Alaska Legislative History: Workers' Comp. SB 322 (1988) (compiled 1993). Prior to its amendment the statute provided for a cap that was a percent of the average weekly wage, rather than a fixed amount. Former AS 23.30.175(a) (1982).

[34] Comparative Analysis, *supra* note 33, at 10.

[35] H. Judiciary Comm., House CS for CS for Senate Bill No. 322 (L&C) Sectional Analysis at 12, 15th Leg., 2d Session (Apr. 6, 1988) *in* Pat Wilson, Alaska Legislative History: Workers' Comp. SB 322 (1988) (compiled 1993).

In general the statute in effect on the date of injury applies to a workers' compensation claim.[36] Louie points to no statutory language that suggests otherwise, nor does he cite cases that do not apply this rule. Even *Peck* applied the version of the statute in effect on the date of injury.[37] Near the time of Louie's injury there appears to have been a consensus that the compensation rates set out in the statute were too low.[38] Louie had the extreme misfortune both to suffer a devastating injury and to suffer it shortly before an amendment to the statute would have increased the benefit amount available to him. We do not discount the devastating effect of Louie's injury on his family and his income: $700 a week is a cheeseparing amount that inadequately compensates him for his lost income. Under the $700 statutory cap, Louie can receive an amount that is equal to a little more than 30% of what his income was in 2000 and approximately 12% of what Smith testified Louie would be earning now if he had not been disabled. But Louie points to no authority that would support using a later version of the statute, and we find

---

[36] *See Thompson v. United Parcel Serv.*, 975 P.2d 684, 688 (Alaska 1999) (applying 1988 version of statute to claim even though statute amended one month after injury). *See also* 5 ARTHUR LARSON & LEX K. LARSON, WORKERS' COMPENSATION LAW § 93.05[1] (2013) (noting general rule that benefit increases are not retroactive and benefit level at time of injury controls). The treatise says that Alaska "applies the benefit level prevailing at the time the disability was rated." *Id*. § 93.05[2]. The cases it cites in support are permanent partial impairment (PPI) cases that were decided under a version of the statute providing that permanent disability benefits were to be calculated "according to currently existing benefit rates regardless of the benefit rate in existence at the time of injury." *Hood v. State, Workmen's Comp. Bd.*, 574 P.2d 811, 813 (Alaska 1978). That statute was repealed in 1977. *Id.* n.4.

[37] *Peck v. Alaska Aeronautical, Inc.*, 756 P.2d 282, 288 (Alaska 1988).

[38] *See* Minutes, H. Judiciary Comm. Hearing on H.B. 419, 21st Leg., 2d Sess. No. 271 (Apr. 3, 2000) (testimony of Paul Grossi, Director, Division of Workers' Comp.) (noting that bill increased benefit amounts but also had provisions to benefit employers).

none. Consequently, the Commission correctly affirmed the Board's decision that Louie is receiving the maximum amount to which he is entitled.

## V.     CONCLUSION

For the foregoing reasons, we AFFIRM the Commission's decision.