*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CENTRAL RECYCLING SERVICES, INC., | ) ) ) | Supreme Court No. S-16036 |
| Appellant, | ) ) | Superior Court No. 3AN-14-04776 CI |
| v. | ) ) ) | O P I N I O N |
| MUNICIPALITY OF ANCHORAGE, | ) ) ) | No. 7150 – February 10, 2017 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Stacey C. Stone, Holmes Weddle & Barcott, P.C., Anchorage, for Appellant. Samuel C. Severin, Assistant Municipal Attorney, and Dennis Wheeler, Municipal Attorney, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Fabe, Justice, not participating.]

WINFREE, Justice.

I. INTRODUCTION

A recycling company requested rebates under a municipal ordinance providing reduced fees for disposing solid waste residue at the municipal landfill. The municipal department dispersing the rebates construed the ordinance as resulting in lower rebates than the company expected. The company sued the municipality, and the

superior court ruled in the municipality's favor. The company appeals. Although the ordinance language is imperfect, legislative intent more strongly supports the municipality's interpretation. We therefore affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

Central Recycling Services, Inc. recovers post-consumer materials for reuse, mainly from construction and demolition waste. These materials include cardboard, glass, steel, aluminum, copper, asphalt, concrete, tires, and lumber. Entities primarily engaged in recycling are entitled to reduced fees at the Anchorage municipal landfill when disposing solid waste residue generated from recyclable materials.[1] The relevant municipal ordinance, AMC 26.80.055, conditionally reduces fees for "[b]usinesses or organizations engaged in recycling of paper, plastic, glass and steel, aluminum, copper and brass."[2] A recycling entity must submit a rebate request and supporting documentation; Solid Waste Services (SWS), a municipal utility operating the landfill, determines whether the entity's residue is eligible for reduced fees.[3] The reduced fees are returned in a quarterly rebate.[4]

Between 2010 and 2014 Central Recycling submitted 12 rebate requests to SWS. Central Recycling apparently received its first rebate in 2012 and, believing it was entitled to a larger rebate, began disputing SWS's application of the ordinance. Specifically, Central Recycling disagreed with SWS's interpretation that the fee reduction applies only to waste residue from materials expressly listed in the ordinance.

---

[1]    Anchorage Municipal Code (AMC) 26.80.055(A) (1996).

[2]    *Id.*

[3]    AMC 26.80.055(A)(2).

[4]    AMC 26.80.055(A)(4).

In January 2014 Central Recycling brought suit against the Municipality of Anchorage, asserting that SWS's ordinance interpretation was incorrect and seeking a declaratory judgment and damages for unpaid rebates. The Municipality moved for summary judgment in January 2015, maintaining that the ordinance allows the rebate only for waste residue from the seven listed materials. Central Recycling opposed, arguing that the list is not exhaustive of the materials generating qualifying residue and that the Anchorage Assembly intended to incentivize recycling to divert waste from the landfill. At oral argument the superior court agreed with the Municipality, explaining that "the plain language of the code . . . said what it said, and that these were the list[ed] . . . things that you['ve] got to recycle." The court granted the Municipality summary judgment on the declaratory remedy, which was dispositive of the action, and entered final judgment against Central Recycling in July 2015.

Central Recycling appeals, contending that the superior court erroneously interpreted the ordinance.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[5] But this appeal presents only a legal question regarding the correct interpretation of AMC 26.80.055, and the parties dispute the level of deference we should apply to the agency's interpretation. Central Recycling argues that we should use our independent judgment in interpreting the ordinance because it does not involve agency expertise.[6] The Municipality argues

---

[5]     *Bush v. Elkins*, 342 P.3d 1245, 1251 (Alaska 2015).

[6]     *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014) (applying independent judgment, this court "interpret[s] [a] statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose").

that the reasonable basis test for agency interpretation applies because "fundamental policy considerations of the administrative agency are at play."[7] Because even under Central Recycling's proposed standard of review we affirm the superior court's decision, we do not need to decide which is appropriate.

## IV. DISCUSSION

### A. Overview

Whether construing a statute or municipal ordinance "[w]e apply the same rules of interpretation."[8] "When we construe a statute, we look at both its plain language and . . . its legislative history."[9] We use a sliding scale approach under which "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative

---

[7] In *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299 (Alaska 2014), we explained:

> We apply the reasonable basis standard to questions of law involving "agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions." When applying the reasonable basis test, we "seek to determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination."

(first quoting *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011); then quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

[8] *City of Kenai v. Friends of Recreation Ctr., Inc.*, 129 P.3d 452, 459 (Alaska 2006).

[9] *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192 (Alaska 2007).

purpose or intent must be."[10] "[W]henever possible, we construe a statute in light of its purpose."[11]

Under AMC 26.80.055(A) municipal landfill disposal fees are conditionally reduced for a recycling entity's solid waste residue:

> Businesses or organizations engaged in recycling of paper, plastic, glass and steel, aluminum, copper and brass shall be granted a one-half reduction in disposal fees for solid waste residue resulting from the recycling operation if all of the conditions provided in subsection A.1. of this section are met.[12] For purposes of this subsection, a recycling operation

---

[10] *Pebble P'ship ex rel. Pebble Mines Corp. v. Parnell*, 215 P.3d 1064, 1075-76 (Alaska 2009) (quoting *City of Kenai*, 129 P.3d at 459).

[11] *Kritz*, 170 P.3d at 192-93.

[12] AMC 26.80.055(A)(1) establishes eight "[c]onditions for fee reduction":

a. Recycling is the primary operation of the business or organization;

b. The recycling operation recovers at least an average of 100 tons of recyclable material per month calculated on a quarterly basis;

c. The recyclable material is shipped out of state or the recyclable material is incorporated into a new consumer product manufactured in Alaska directly by the recycling operation;

d. The solid waste residue is a maximum of 25 percent of the weight of the recyclable material recovered;

e. The solid waste residue is a direct result of the recycling operation only;

f. The solid waste residue is not commingled with other solid waste not related to the recycling operation when

(continued...)

is one that recovers post-consumer solid waste materials for use in new consumer products.

Eligible solid waste residue must result directly from the recycling operation and be no more than 25% of the recovered recyclable material's weight.[13] After submitting a quarterly report to SWS documenting types and quantities of materials recycled and their respective residues, a recycling business receives the fee reduction through a rebate.[14]

The parties dispute the meaning of the provision's first sentence. The Municipality contends that a business recycling any of those seven items with other materials is entitled to a fee rebate for residue generated *only from those seven specific items*. The Municipality asserts that the list is exclusive and that residue produced from other recyclable materials is ineligible for the rebate.

It is not clear whether Central Recycling's primary contention is that the list merely reflects types of materials an eligible business *might* recycle — and therefore is illustrative and not operative — or whether, at minimum, an entity *must* recycle listed

---

[12] (...continued)
it is delivered to the Anchorage Regional Landfill;

g.    The solid waste residue does not contain any recyclable material; and

h.    The solid waste residue shall be free from flowing liquids, not have a moisture content greater than 30 percent and not be hazardous. Sample testing costs shall be the responsibility of the generator.

The parties do not dispute whether Central Recycling meets these eight additional requirements.

[13] AMC 26.80.055(A)(1)(d); (A)(1)(e).

[14] AMC 26.80.055(A)(4).

materials, regardless of other materials it recycles, to produce eligible residue. But the plain language does not suggest the list is only representative of recyclable materials generally; as the Municipality observes, under Central Recycling's argument "the list of seven items could simply be removed from the ordinance," rendering its presence meaningless. And "[w]hen we interpret a statute, we presume that no words or provisions are superfluous and that the legislature intended 'every word, sentence, or provision of a statute to have some purpose, force, and effect.' "[15] We therefore assume Central Recycling poses the second, closer contention — that so long as a business recycles one or more listed materials, it is entitled to reduced fees for residue derived from *any materials it recycles*.

## B. The Ordinance Is Ambiguous.

The fee reduction under AMC 26.80.055(A) is restricted to "[b]usinesses or organizations engaged in recycling of paper, plastic, glass and steel, aluminum, copper and brass."[16] Tools of statutory construction could apply to support either interpretation the parties propose. On one hand the ordinance's express language does not strictly limit the fee reduction to residue from listed materials. On the other hand common sense and the *expressio unius* maxim support interpreting the list as exclusive. The ordinance ultimately is too ambiguous to interpret based on its language alone.

---

[15] *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 16 (Alaska 2014) (quoting *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 345 (Alaska 2011)).

[16] Central Recycling suggests that, under the Municipality's interpretation, "and" appearing twice in the sentence would require a recycling operation to recycle "all seven items and only the seven items." Although "and" typically creates a conjunctive, a strict interpretation of its effect here would produce an inflexible and unintended result. *Cf. Emp't Sec. Comm'n v. Wilson*, 461 P.2d 425, 428-29 (Alaska 1969) (describing the conjunctive effect of "and" in statutory construction).

Central Recycling contends that the relevant language identifies eligible *businesses* — those recycling listed materials — rather than eligible *materials or residue*. And the ordinance's language neither expressly limits rebates to residue from listed materials nor addresses unlisted materials. Central Recycling recycles cardboard, plastic, glass, steel, aluminum, and copper, along with additional items not listed. As a "business . . . engaged in recycling" listed materials, Central Recycling would meet the threshold requirement under its interpretation.

The second part of the first sentence also supports Central Recycling's interpretation because it does not associate discount eligibility with the residue generated only from the seven listed items. Rather, AMC 26.80.055(A) explains that the rebate shall be granted "for solid waste residue *resulting from the recycling operation*." (Emphasis added.) The Anchorage Assembly could have limited rebate eligibility by referring back to the listed materials, but it did not. Central Recycling contends this language selection was purposeful, meant to "encourage recycling of all kinds of 'recyclable materials,' " not just the seven listed materials.

Finally, Central Recycling notes that AMC 26.80.055(A)'s second sentence defines "recycling operation" broadly as an operation "that recovers post-consumer solid waste materials for use in new consumer products" without referencing the listed materials. That provision could be plainly read — as Central Recycling asserts — as providing the fee reduction for residue resulting from any operation recovering post-consumer solid waste materials for use in new consumer products, not just operations recycling the listed materials and not just waste produced from the listed materials.

Despite Central Recycling's arguments, tools of statutory construction also support the Municipality's contention that the seven-item list is exhaustive of the materials for which a recycling operation may receive the fee reduction. A natural

reading of AMC 26.80.055(A)'s initially restricting clause could indicate that "*the recycling operation*" (emphasis added) refers back to the entity's "recycling of" the explicit seven materials; therefore, the "residue resulting" from that operation would mean residue produced from recycling only those seven materials.

Interpreted this way, the first sentence effectively would describe "the recycling operation" as a business or organization recycling the seven listed items. This definition would be at odds with AMC 26.80.055(A)'s second sentence, expressly defining "recycling operation" in more general terms as "one that recovers post-consumer solid waste materials for use in new consumer products." But the Municipality argues that when one statutory provision "deals with a subject in general terms and another deals with a part of the same subject in a more detailed way" — and the conflicting provisions cannot be harmonized — then "the specific section will control over the general."[17] Because the materials list provides a more specific explanation of a *recycling operation*, it controls, resolving the conflict.

Following this interpretation, if the eligible "residue resulting" were only the residue corresponding to the listed materials, then the Municipality's assertion that *expressio unius est exclusio alterius* applies has force. *Expressio unius* operates when "a statute expressly enumerates the things or persons to which it applies."[18] The maxim embraces the negative implication, "establish[ing] the inference that, where certain things are designated in a statute, 'all omissions should be understood as exclusions.' "[19]

---

[17] *Nelson v. Municipality of Anchorage*, 267 P.3d 636, 642 (Alaska 2011) (quoting *In re Hutchinson's Estate*, 577 P.2d 1074, 1075 (Alaska 1978)).

[18] *Ranney v. Whitewater Eng'g*, 122 P.3d 214, 218 (Alaska 2005).

[19] *Id.* (quoting *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066
(continued...)

Omitting other recyclable materials from the express list establishes an inference that unrelated residue is ineligible for the rebate program.

"Reason, practicality, and common sense"[20] also favor the Municipality. Construing the ordinance as Central Recycling proposes, a business recycling only unlisted materials would be disqualified from rebates, while a business recycling only small quantities of listed materials but disposing large quantities of residue from unlisted recyclable materials would receive large rebates. This seems impractical considering the financial impact to the Municipality and its landfill from lost disposal fees.[21]

Because there is some ambiguity in the provision's language, we examine legislative history for the ordinance's purpose and the lawmaking body's intent.

## C. Legislative History Supports The Municipality's Interpretation.

The Anchorage Assembly adopted the ordinance in April 1996.[22] As introduced that January the ordinance did not contain the seven-item list. The first sentence simply stated: "Businesses or organizations engaged in recycling shall be

---

[19]    (...continued)
(Alaska 1991)).

[20]    *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014).

[21]    Central Recycling's interpretation could negate the ordinance's public benefit by increasing other user groups' disposal fees to compensate for recycling operations' discounts, a concern the Anchorage mayor and the municipal Solid Waste Advisory Commission expressed in separate memoranda on the then-proposed ordinance. Memorandum 182-96 from Rick Mystrom, Mayor, to the Anchorage Assembly on AO 96-18(S), Proposal for Reduced Disposal Fees for Recycling Operations, at 1-2 (February 6, 1996); Statement of Solid Waste Advisory Commission to the Anchorage Assembly on AO No. 96-18 (Jan. 31, 1996).

[22]    Minutes, Anchorage Assembly Regular Meeting on Ordinance No. AO 96-18(S), at 12 (Apr. 9, 1996).

granted a one-half reduction in disposal fees for residue resulting from the recycling operation if all of the conditions . . . below are met."[23] The original language demonstrated an intent to discount residue from *any* recyclable material.

The proposal's initial policy goals probably were best expressed by its main sponsor, who introduced the reduced disposal fee ordinance proposal because recycling businesses and organizations provide a twofold "invaluable service" to the community by (1) accepting waste materials otherwise destined for the municipal landfill and (2) processing those materials to remove recyclables for use in new consumer products.[24] As the sponsor stated: "The critical point is: By accepting and processing this waste, the total amount of waste placed in our landfill is significantly reduced."[25] Central Recycling argues the proposal's purpose was preserving landfill capacity by incentivizing recycling.

The Municipality concedes that the ordinance's stated rationale was diverting recyclable waste from the landfill, but argues that the seven-item list was later added to limit the waste residue accepted for reduced fees. Although "[s]tatements made by a bill's sponsor during legislative deliberations are relevant evidence when the court is trying to determine legislative intent,"[26] and we aim to construe a statute "in light of

---

[23] Proposed Ordinance of Anchorage Assembly, Jan. 9, 1996, AO No. 96-18.

[24] Memorandum AM 73-96 from Craig Campbell, Assembly Chair, to the Anchorage Assembly on AO 96-18, Proposal for Reduced Disposal Fees for Recycling Operations, at 1 (Jan. 9, 1996).

[25] *Id.*

[26] *Trudell v. Hibbert*, 272 P.3d 331, 337 (Alaska) (quoting *Beck v. State, Dep't of Transp. & Pub. Facilities*, 837 P.2d 105, 117 (Alaska 1992)), *revised on reh'g* (Alaska 2012), *vacated in part on reh'g on other grounds*, 299 P.3d 1279 (Alaska 2013).

its purpose,"[27] a sponsor's statement does not account for the intent behind subsequent amendments. We therefore must examine the purpose of including the seven-item list.

The language at issue was recommended by the City Mayor and SWS. The mayor explained:

> [W]e've added specific types of materials traditionally being recycled[,] i.e. paper, plastic, glass, steel, and the non-ferrous metals of aluminum, copper[,] and brass in order to better define what recycling means. By adding these specific products it would also mean that residues left after hydrocarbon contaminated soils have been treated, whole car seats or tires originating from salvage yards or forest products resulting from land clearing operations would not be eligible for the discounted fees.[28]

Although this explanation is not entirely clear, we agree with the Municipality that it reasonably demonstrates the list was added to limit eligibility to residue from the listed materials. The mayor's statement at first merely suggests that the list was added to "better define" what is "traditionally" — or typically — recycled, rather than to limit eligible materials. Similarly, suggesting that the list helps "better define" what is meant by "recycling" may imply the list is not exhaustive of what is recyclable or what residue qualifies.[29]

_____

[27]     *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192 (Alaska 2007).

[28]     Memorandum AO 343-96 from Rick Mystrom, Mayor, to the Anchorage Assembly on AO 96-18(S), Proposal for Reduced Disposal Fees for Recycling Operations, at 1 (Apr. 2, 1996).

[29]     *Id.*

But the second sentence clarifies that "specific products" — meaning residue generated from any materials not listed — "would not be eligible for the discounted fees."[30] The mayor's explanation, as a whole, shows that the seven materials were listed to preclude residue from unlisted materials. Because the mayor's explanation responded to the original proposed ordinance, and because the Assembly's enacted ordinance included the modified language recommended by the mayor, we presume the Assembly agreed with the mayor's reasoning for adding the seven-item list.

Finally, Central Recycling's interpretation partly, and incorrectly, relies on the Assembly's post-enactment ordinance description. When the Assembly amended AMC 26.80.055 in 2000 to eliminate its sunset clause, an Assembly member who had been a sponsor of the original enactment explained that the ordinance "came about to reduce the bulk that is placed in the landfill."[31] Central Recycling suggests this should be interpreted as confirming the goal of extending the landfill's life by avoiding excess waste, with little concern over encouraging specific forms of recycling or consequent revenue losses. Because the statement was made four years later — and the Assembly was not directly probing the ordinance's policy rationale at that time — we accord this statement little weight.

We therefore conclude that the legislative history supports the Municipality's view: AMC 26.80.055(A) provides an exclusive list of the materials whose recycling generates residue eligible for the disposal fee reduction.

## V. CONCLUSION

We AFFIRM the superior court's decision.

---

[30] *Id.*

[31] Minutes, Anchorage Assembly Regular Meeting on Ordinance No. AO 2000-30, at 20-21 (Apr. 18, 2000) (comments of George Wuerch, Assembly Member).